**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **PERSONAL AUDIO, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No. 1:14-CV-8** |
| **v.** | § | |
| | § | **JUDGE RON CLARK** |
| **ACER INC., ET AL.** | § | |
| | § | **Jury Trial Demanded** |
| *Defendants*. | § | |

## FIRST AMENDED COMPLAINT

Plaintiff Personal Audio, LLC ("Personal Audio"), by and through its attorneys, for its First Amended Complaint against Acer America Corporation, Apollo Brands, ASUSTek Computer, Inc., ASUS Computer International, Barnes & Noble Inc., Fujitsu America Inc., Huawei Device Co., Ltd, Huawei Device USA Inc., Lenovo (United States) Inc., Toshiba Corporation, Toshiba America Information Systems, Inc., and ZTE (USA) Inc., (collectively, "Defendants") hereby alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is a patent infringement action to end Defendants' unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products and methods incorporating Plaintiff Personal Audio's patented inventions.

2.    Personal Audio holds all substantial rights and interest in and to United States Patent No. 6,199,076 (the "'076 patent"), issued on March 6, 2001, for "Audio Program Player Including A Dynamic Program Selection Controller."

3.     Personal Audio holds all substantial rights and interest in and to United States Patent No. 7,509,178 entitled "Audio Program Distribution and Playback System" ("the '178 patent").

4.     Defendants make, use, sell and/or import infringing products and provide infringing services in violation of the '076 patent and the '178 patent.  Plaintiff Personal Audio seeks injunctive relief to prevent Defendants from continuing infringement of Plaintiff's patent rights.  Plaintiff Personal Audio further seeks monetary damages and prejudgment interest for Defendants' past infringement of the '076 patent and the '178 patent.

## II.     THE PARTIES

5.     Plaintiff Personal Audio is a limited liability company organized and existing under the laws of the State of Texas, with its corporate office located at 550 Fannin St., Ste. 1313, Beaumont, TX 77701.

6.     Upon information and belief, Defendant Acer America Corporation Inc. is a California corporation with its principal place of business located at 333 W. San Carlos Street, Ste. 1500, San Jose, CA 95110.  Acer America Corporation Inc.'s registered agent for service of process is CT Corporation System, 818 W. Seventh Street, Los Angeles, California 90017.

7.     Upon information and belief, Defendant Apollo Brands is a Texas company with its principal place of business located at 6175 West Main Street, Suite 450, Frisco, Texas 75034. Apollo Brand may be served with process by serving Bill Howell at 6175 West Main Street, Suite 450, Frisco, Texas 75034.

8.     Upon information and belief, Defendant ASUSTek Computer, Inc. is a Taiwanese corporation with its principal place of business located at 15 Li The Rd., Taipei City, Taipei, 11259 Taiwan, where it may be served with process.

9.     Upon information and belief, Defendant ASUS Computer International is a California corporation with its principal place of business located at 800 Corporate Way, Fremont, California 94539.   ASUS Computer International's registered agent for service of process is CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

10.     Upon information and belief, Defendant Barnes & Noble, Inc.  is a Delaware corporation with its principal place of business located at 122 Fifth Avenue, New York, New York 10011.  Barnes & Noble, Inc.'s registered agent for service of process is Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

11.     Upon information and belief, Defendant Fujitsu America, Inc. is a California corporation with its principal place of business located at 1250 E. Arques Avenue. M/S 122, Sunnyvale, California 94085.  Fujitsu America, Inc.'s registered agent for service of process is CT Corporation System, 818 West Seventh St., 2nd Floor, Los Angeles, CA 90017.

12.     Upon information and belief, Defendant Huawei Device Co., Ltd. is a corporation organized under the laws of the People's Republic of China, with its principal place of business located in Huawei Industrial Base, Bantian, Longgang, Shenzhen, Guangdong, P.R. China 518129, where it can be served with process.

13.     Upon information and belief, Defendant Huawei Device USA Inc. is a Texas corporation with its principal place of business located at 5700 Tennyson Parkway, Suite 4600, Plano, Texas 75024.  Huawei Device USA Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

14.     Upon information and belief, Defendant Lenovo (United States) Inc. is a Delaware corporation with its principle place of business located at 1009 Think Place,

FIRST AMENDED COMPLAINT

3

Morrisville, North Carolina 27560.  Lenovo (United States) Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

15.     Upon information and belief, Defendant Toshiba Corporation is a Japanese corporation with its principal place of business located at 1-1-1 Shibaura, Minato-Ku, Tokyo, 105-0023 Japan, where it may be served with process.

16.     Upon information and belief, Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business located at 9740 Irvine Boulevard, Irvine, California 92618.  Toshiba America Information Systems, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

17.     On information and belief, ZTE (USA) Inc. is a New Jersey corporation with its principal place of business located at 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.  ZTE (USA) Inc.'s registered agent for service of process is Jing Li, 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.

## III.     JURISDICTION AND VENUE

18.     This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

19.     This Court has personal jurisdiction over Defendants because they have committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum. For example, Defendants have committed acts of infringement in this District,  by  among  others

First Amended Complaint

things, offering to sell and selling products that infringe the asserted patents, including the accused devices as alleged herein.

20.     Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 139l (b), (c) and l400(b) because Defendants have committed acts within this judicial district giving rise to this action, and Defendants have and continue to conduct business in this judicial district, including one or more acts of selling, using, importing and/or offering for sale infringing products or providing service and support to Defendants' customers in this District.

21.     Venue in the Eastern District of Texas is proper because this district is centrally located to resolve common issues of fact among Personal Audio and Defendants.

22.     Venue in the Eastern District of Texas is proper because of judicial economy. This Court has presided over three previous lawsuits, and one pending lawsuit involving the same patents at issue. Initially, the Honorable Judge Ron Clark presided over *Personal Audio, LLC v. Apple Inc. et al*., Civil Action No. 9:09-CV-111 ("Personal Audio v. Apple"). As part of that action, the Court has construed the claims of the asserted '076 patent and the '178 patent in Memorandum Opinions and Orders dated December 21, 2010 (Dkt. No. 258), January 31 , 2011 (Dkt. No. 292), and May  18, 2011 (Dkt. No. 358).

23.     Additionally, on September 9, 2011, Personal Audio filed suit against Samsung, Motorola, HTC, and LG, which was duly assigned to the Honorable Ron Clark. *Personal Audio, LLC, v. Samsung Electronics Co., Ltd. et al,* Civil Action No. 1:11-CV-00432-RC.  The matter against each defendant was resolved by confidential settlement agreements.

24.     On November 22, 2011, Personal Audio filed suit against Amazon, which was duly assigned to the Honorable Ron Clark. *Personal Audio, LLC, v. Amazon Digital Services,*

FIRST AMENDED COMPLAINT

*Inc. et al,* Civil Action No. 1:11-cv-00655-RC.   The matter was resolved by a confidential settlement agreement.

25.     On August 13, 2013, Personal Audio filed suit against FUHU, Inc., which was also assigned to the Honorable Ron Clark.  The matter is currently pending before the Court.

## IV.     BACKGROUND

### Personal Audio

26.     James Logan, the founder of Personal Audio, is a successful businessman and entrepreneur.   In 1982, Logan founded MicroTouch Systems.  Under Logan's stewardship, MicroTouch became a leading developer of touch screen technologies used in a variety of consumer and commercial products.   When Logan founded MicroTouch, the majority of touch screens used plastic surfaces for their contact interface.   MicroTouch was one of the first companies to successfully manufacture and market touch screens with glass surfaces.   By the mid-1990s, MicroTouch  was  the  world's  leading  supplier  of  touch  screen  technology. MicroTouch's technology became the industry standard and was widely used in retail outlets and purchased by large companies.

27.     For fourteen years, from 1982 until 1996, Logan served as MicroTouch's chief executive officer ("CEO").  MicroTouch had a single employee (Logan) when Logan started the company. By 1996, under Logan's leadership, MicroTouch employed over 600 individuals and realized about $95 million in sales.  In 2000, 3M purchased MicroTouch for approximately $160 million.

28.     Logan is a prolific inventor.  Logan is listed as an inventor or co-inventor on no fewer than 32 United States patents.

29.     During his time at MicroTouch, Logan had to commute to work every day. Logan became frustrated with the lack of radio listening options available during his commute. This frustration gave Logan a new idea for presenting audio programs – an audio player for delivering personalized audio content based on the past listening habits or selections of an individual user.

30.     In 1996, Logan resigned as CEO of MicroTouch.  Thereafter he started a new company, Personal Audio, Inc., to develop, manufacture, and sell his new idea for an audio player.

31.     From 1996 until 1998, Logan served as the president of Personal Audio, Inc.  One of the first employees he hired was Daniel Goessling.  Goessling is a software developer who had previously worked with Logan on developing a patented invention for pausing live television.  Goessling is listed as an inventor or co-inventor on no fewer than 12 United States patents.

32.     In the spring of 1996, Logan also contacted Charles Call for the purpose of obtaining patent protection. Call is a patent attorney. Call has worked as a patent attorney for over fifty years. As a patent attorney, Call has extensive experience with computers and computer-related patents.  Call has drafted over 500 United States patents.  Call is also listed as an inventor or co-inventor on no fewer than 12 United States patents.

### ‘076 Patent and ‘178 Patent

33.     By May of 1996, Call began drafting the application that became United States Patent Application No. 08/724,813 ("the '813 application"), for the purpose of obtaining patent protection for the personal audio player invention. The '813 application claimed, among other things, an audio player capable of receiving navigable play lists.

34.     On October 2, 1996, the '813 application was filed with the United States Patent & Trademark Office ("PTO").  Logan, Goessling, and Call were listed as co-inventors of the '813 application.

35.     On March 6, 2001, the PTO issued United States Patent No. 6,199,076 (the '076 patent) entitled "Audio Program Player Including A Dynamic Program Selection Controller."

36.     On February 13, 200l, Call filed United States Patent Application No. 091782,546. ("the '546 application"). The '546 application was a division of the previously-filed '813 application. The '546 application claimed, among other inventions, an audio player capable of downloading navigable playlists.

37.     On March 24, 2009, the PTO issued United States Patent No. 7,509,178 (the '178 patent) entitled "Audio Program Distribution and Playback System."

38.     The '076 and '178 patents (collectively "the Asserted Patents") share a common specification.

39.     The '076 patent claims, among other inventions, a player that can reproduce a selection of audio program files, and is further capable of receiving a navigable playlist. The claimed player has the capability of using the received navigable playlist to allow a user to navigate among the audio files identified in the playlist during playback.  *See* '076 patent, 46:13-51 & 47:38-48:29.

40.     The '076 patent specification describes an audio program player in a variety of hardware configurations. These hardware configurations include "an Internet server and PC client player architecture," "PDAs," a "portable computer," and a "simplified player for mobile use." *See* '076 patent, 7:41-66.

41.     The '178 patent claims, among other inventions, an audio program player capable of downloading audio program segments and a sequencing file that specifies the playlist sequence.  The claimed player is capable of delivering a succession of audio program segments in a specified sequence and further allows a user to navigate among the audio program segments in the playlist sequence. *See* '178 patent, 45:60-46:33 & 48:1-49:5.

42.     The Asserted Patents specification describes several ways the player may store data, including data received from outside the player and audio files.  These ways include "high speed RAM storage and a persistent mass storage device" or "replaceable media, such as an optical disk cartridge." *See* '076 patent, 4:33-41 & 7:63-66; '178 patent, 4:43-51 & 8:4-8.

43.     The Asserted Patents specification describes several ways that the player may reproduce audio signals in an audible form.  These ways include a "sound card," "speakers," and a "headphone-out port." *See* '076 patent, 5:22-25; '178 patent, 5:31-34.

44.     The Asserted Patents specification describes several types of controls with which the player may accept control commands from a user.  These ways include a "keyboard," a "'touchpad," or "a small number of buttons." *See* '076 patent, 5:26-29, 13:49-52 & 36:40-47; Ex. '178 patent, 5:35-38, 13:55-57 & 36:28-36.

45.     The Asserted Patents specification describes that the player may be "advantageously implemented by… a processor." *See* '076 patent, 4:33-41; '178 patent, 4:43-51.

46.     In addition to hardware components, the Asserted Patents discloses the use of software algorithms.  These software algorithms include continuously playing audio files ('076 patent, 12:16-13:11 & 34:28-35:44; '178 patent, 12:27-13:16 & 34:19-35:34), detecting input commands ('076 patent, Fig. 3, steps 261, 262, 275, and 278; '178 patent, Fig 3, steps 261, 262, 275, and 278), skipping forward to the next audio file in a playlist sequence ('076 patent, 15:21-

25 & 34:28-35:48; '076 patent, 15:25-29 & 34:19-35:37), restarting playback of the currently playing audio file ('076 patent, 15:49-59; '178 patent, 15:53-63), and skipping backward to the previous audio file in a sequence ('076 patent, 15:49-59 & 34:28-35:53; '178 patent, 5:53-63 & 34:19-35:42).

47.     Personal Audio holds all substantial rights in and to the Asserted Patents, including all rights to recover for all past and future infringements thereof.

### Personal Audio's Lawsuit Against Apple Inc.

48.     On June 25, 2009, Personal Audio sued Apple Inc. ("Apple") in the Eastern District of Texas for infringement of the '076 patent.  Personal Audio alleged that Apple infringed the '076 patent by selling the iPod classic generations 1 through 6, the iPod mini generations 1 and 2, iPod nano generations 1 through 5, iPod touch generations 1 through 3, iPhone, iPhone 3G, iPhone 3GS, and iPad.

49.     The Court, the Honorable Ron Clark presiding, held a jury trial from June 23 until July 8, 2011.

50.     During the trial, Apple asserted that claims 1, 3, and 15 of the '076 patent and claims 1, 6, 13 and 14 of the '178 patent were invalid as anticipated or obvious.  For each asserted claim, Apple argued that it was anticipated by the DAD486x Digital Audio Delivery System Operation Manual ("DAD Manual") and DAD486x Digital Audio Delivery System ("DAD System").  Apple also argued that each of the asserted claims was rendered obvious by various combinations of the DAD Manual, DAD System, Sound Blaster 16 User's Guide for Windows 95, Microsoft Windows 95 Resource Kit manual, "Architecting Personalized Delivery of Multimedia Information" by S. Loeb, Music Shop Reference Manual, Sony Discman player and instructions, and Sony Minidisc player and instructions.

FIRST AMENDED COMPLAINT

51.     On July 8, 2011, the jury, by unanimous verdict, found that Apple infringed claims 1, 3, and 15 of the '076 patent by selling the iPod classic generations 3 through 6, iPod mini generations 1 and 2, and iPod nano generations 1 through 5 in the United States.  The jury awarded damages to Personal Audio in the amount of $8,000,000.00.

52.     The jury rejected all of Apple's invalidity arguments and found that claims 1, 3, and 15 of the '076 patent and claims 1, 6, 13 and 14 of the '178 patent are not anticipated or obvious.

53.     On August 30, 2011, the Court ordered final judgment in favor of Personal Audio in the amount of $8,000,000.00 in damages, $4,182,331.00 in pre-judgment interest, post-judgment interest calculated at the rate of 0.11 %, and costs of courts.

54.     On January 14, 2010, Apple submitted a request for *inter partes* reexamination of the '178 patent which the PTO granted (Control No. 95/001,295).  During reexamination, the Personal Audio v. Apple lawsuit concluded and the District Court found that Apple had failed to carry its burden of establishing invalidity of the '178 patent claims.  The District Court's decision became final and, as a result, the PTO terminated the reexamination proceedings pursuant to 35 U.S.C. §317(b).  All of the '178 patent's claims remain valid and enforceable.

55.     On March 17, 2011, Apple submitted a request for *ex parte* reexamination of Claims 1-3 and 14-15 the '076 patent which the PTO granted (Control No. 90/011,579).  The PTO confirmed the patentability of Claims 1-3 and 14-15 and rejected Apple's position that prior art rendered the '076 patent claims invalid or obvious.  The PTO issued a Certificate of Reexamination for the '076 patent on November 30, 2012.

**Acer's Infringing Devices**

56.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

57.     Upon information and belief, Acer America Corporation ("Acer") manufactures and sells several devices including, but not limited to the Iconia tablet series, the Acer Iconia W5 and W7 tablet series, as well as various laptops, netbooks, ultrabooks, desktops, and all-in-one devices.

58.     Upon information and belief, Acer has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Acer is not found to literally infringe, Acer infringes under the doctrine of equivalents.

59.     By way of example and based upon information and belief, Acer's product line includes the Iconia which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.*  playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

60.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

61.     Upon information and belief, Acer also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.  By way of example, Acer's product line includes the Iconia W3 tablet device.  The device utilizes Microsoft's Music application ("Microsoft's Music App") which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

62.     Upon information and belief, Acer also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Acer is not found to literally infringe, Acer infringes under the doctrine of equivalents.

63.     By way of example, the Iconia has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the Iconia has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

64.     By at least December 27, 2012, Plaintiff gave notice to Acer of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions.

Notwithstanding, Acer continues to willfully infringe upon one or more claims of the Asserted Patents.

65.     With knowledge of the '076 and '178 patents at least as early as December 27, 2012, Acer has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  Acer provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

**Apollo's Infringing Devices**

66.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

67.     Upon information and belief, Apollo Brands (collectively "Apollo") manufactures and sells several devices including, but not limited to the Trio tablet series and Eclipse MP3 player series product lines.

68.     Upon information and belief, Apollo has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Apollo is not found to literally infringe, Apollo infringes under the doctrine of equivalents.

69.     By way of example and based upon information and belief, Apollo's product line includes the Trio tablet which is an audio program player capable of playing a sequence of audio

program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

70.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

71.     Upon information and belief, Apollo also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Apollo is not found to literally infringe, Apollo infringes under the doctrine of equivalents.

72.     By way of example, the Trio has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the Trio has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

73.     With knowledge of the '076 and '178 patents at least as early as the filing of Plaintiff's complaint, Apollo has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United

States, knowing that Plaintiff alleges such activities to be infringing.  Apollo provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

## ASUS's Infringing Devices

74.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

75.     Upon information and belief, ASUSTek Computer, Inc. and ASUS Computer International (collectively "ASUS") manufacture and sell several devices including, but not limited to the ASUS PadPhone, ASUS Nexus 7, ASUS eee Slate, ASUS VivoTab and ASUS Transformer Tablets product lines as well as various laptops, netbooks, ultrabooks, desktops, and all-in-one devices.

76.     Upon information and belief, ASUS has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if ASUS is not found to literally infringe, ASUS infringes under the doctrine of equivalents.

77.     By way of example and based upon information and belief, ASUS's product line includes the Nexus 7 which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

78.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

79.     Upon information and belief, ASUS also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.  By way of example, ASUS's product line includes the VivoTab tablet device.  The device utilizes Microsoft's Music App which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

80.     Upon information and belief, ASUS also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if ASUS is not found to literally infringe, ASUS infringes under the doctrine of equivalents.

81.     By way of example, the Nexus 7 has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics

FIRST AMENDED COMPLAINT

17

the playlist sequence. In particular, the Nexus 7 has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

82.     By at least November 29, 2012, Plaintiff gave notice to ASUS of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, ASUS continues to willfully infringe upon one or more claims of the Asserted Patents.

83.     With knowledge of the '076 and '178 patents at least as early as November 29, 2012, ASUS has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  ASUS provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

### Barnes & Noble's Infringing Devices

84.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

85.     Upon information and belief, Barnes & Noble, Inc. (collectively "B&N") manufactures and sells several devices including, but not limited to the Nook and Nook HD + tablet series product lines.

86.     Upon information and belief, B&N has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because

the manner of use of the device differs in no substantial way from the claims of the patent, if B&N is not found to literally infringe, B&N infringes under the doctrine of equivalents.

87.     By way of example and based upon information and belief, B&N's product line includes the Nook HD+ tablet which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

88.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

89.     Upon information and belief, B&N also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if B&N is not found to literally infringe, B&N infringes under the doctrine of equivalents.

90.     By way of example, the Nook HD+ has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics

the playlist sequence. In particular, the Nook HD+ has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

91.     By at least November 20, 2012, Plaintiff gave notice to B&N of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, B&N continues to willfully infringe upon one or more claims of the Asserted Patents.

92.     With knowledge of the '076 and '178 patents at least as early as November 20, 2012, B&N has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  B&N provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

## Fujitsu's Infringing Devices

93.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

94.     Upon information and belief, Fujitsu America Inc. ("Fujitsu") manufactures and sells several devices including, but not limited to the LIFEBOOK UH572 Ultrabook, UH772 Ultrabook, LH532 Notebook, AH532 Notebook, STYLISTIC M532, Q702, Q572; LIFEBOOK T902 Tablet PC, and T732 Tablet PC series product lines.

95.     Upon information and belief, Fujitsu has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative,

FIRST AMENDED COMPLAINT

because the manner of use of the device differs in no substantial way from the claims of the patent, if Fujitsu is not found to literally infringe, Fujitsu infringes under the doctrine of equivalents.

96.     By way of example and based upon information and belief, Fujitsu's product line includes the STYLISTIC M532 which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

97.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

98.     Upon information and belief, Fujitsu also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.  By way of example, Fujitsu's product line includes the UH772 Ultrabook device.  The device utilizes Microsoft's Music App which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

FIRST AMENDED COMPLAINT

99.     Upon information and belief, Fujitsu also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Fujitsu is not found to literally infringe, Fujitsu infringes under the doctrine of equivalents.

100.     By way of example, the STYLISTIC M532 has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the STYLISTIC M532 has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

101.     By at least February 1, 2013, Plaintiff gave notice to Fujitsu of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, Fujitsu continues to willfully infringe upon one or more claims of the Asserted Patents.

102.     With knowledge of the '076 and '178 patents at least as early as February 1, 2013, Fujitsu has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  Fujitsu provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

FIRST AMENDED COMPLAINT

**Huawei's Infringing Devices**

103.    Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

104.    Upon information and belief, Huawei Device Co., Ltd  and Huawei Device USA Inc. (collectively "Huawei") manufacture and sell several devices including, but not limited to the Huawei MediaPad S7 Pro, MediaPad 10 FHD and MediaPad Lite tablet series, the Huawei Ascend W1, Ascend D2, Ascend P1, Ascend P1s, Ascend D1, Ascend Mate, Ascend G600, U8651T, M920, U8652, Y200, G300, Honor, Vision, Sonic, M865, IDEOS X3 and M866 smart phone series product lines.

105.    Upon information and belief, Huawei has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Huawei is not found to literally infringe, Huawei infringes under the doctrine of equivalents.

106.    By way of example and based upon information and belief, Huawei's product line includes the MediaPad S7 Pro which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.*  playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

FIRST AMENDED COMPLAINT

107.     Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

108.     Upon information and belief, Huawei also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.   By way of example, Huawei's product line includes the Ascend W1 device.   The device utilizes Microsoft's Music App which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

109.     Upon information and belief, Huawei also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.   In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Huawei is not found to literally infringe, Huawei infringes under the doctrine of equivalents.

110.     By way of example, the MediaPad S7 Pro has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that

First Amended Complaint

specifics the playlist sequence. In particular, the MediaPad S7 Pro has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

111.    By at least January 23, 2013, Plaintiff gave notice to Huawei of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, Huawei continues to willfully infringe upon one or more claims of the Asserted Patents.

112.    With knowledge of the '076 and '178 patents at least as early as January 23, 2013, Huawei has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  Huawei provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

## Lenovo's Infringing Devices

113.    Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

114.    Upon information and belief, Lenovo (United States) Inc. ("Lenovo") manufactures and sells several devices including, but not limited to the Yoga 8, Yoga 10, IdeaTab S1110, A2107, Lynx, ThinkPad Tablet 2 and Helix tablet/hybrid series and the ThinkPad Edge E530, E535, E430, L530, X230, G585, T430, T530, W530, X131, X1, E430, Twist Multitouch Ultrabook, IdeaPad Yoga 13, U310, Y400, Y480, Y580 and Z380 laptop/convertible/pc series product lines.

115.    Upon information and belief, Lenovo has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among

First Amended Complaint

25

other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Lenovo is not found to literally infringe, Lenovo infringes under the doctrine of equivalents.

116.    By way of example and based upon information and belief, Lenovo's product line includes the Yoga 10 which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.*  playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

117.    Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

118.    Upon information and belief, Lenovo also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.  By way of example, Lenovo's product line includes the ThinkPad Tablet 2 device.  The device utilizes Microsoft's Music App which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

First Amended Complaint

119.    Upon information and belief, Lenovo also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Lenovo is not found to literally infringe, Lenovo infringes under the doctrine of equivalents.

120.    By way of example, the Yoga 10 has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the Yoga 10 has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

121.    By at least January 23, 2013, Plaintiff gave notice to Lenovo of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, Lenovo continues to willfully infringe upon one or more claims of the Asserted Patents.

122.    With knowledge of the '076 and '178 patents at least as early as January 23, 2013, Lenovo has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  Lenovo provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

FIRST AMENDED COMPLAINT

27

**Toshiba's Infringing Devices**

123.    Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

124.    Upon information and belief, Toshiba Corporation and Toshiba America Information Systems, Inc. (collectively "Toshiba") manufacture and sell several devices including, but not limited to the Toshiba Excite and Thrive tablet series, the Toshiba Satellite, Qosmio, Portege and Tecra laptop series and the Toshiba all-in-one desktop series product lines.

125.    Upon information and belief, Toshiba has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Toshiba is not found to literally infringe, Toshiba infringes under the doctrine of equivalents.

126.    By way of example and based upon information and belief, Toshiba's product line includes the Excite 13 tablet which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence.  The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

127.    Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and

First Amended Complaint

respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

128.    Upon information and belief, Toshiba also imports, makes, sells, offers to sell, and/or uses a device which utilizes Microsoft's Windows 8 operating system and related software applications.  By way of example, Toshiba's product line includes the Excite 10 tablet device.  The device utilizes Microsoft's Music App which when used in conjunction with the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

129.    Upon information and belief, Toshiba also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if Toshiba is not found to literally infringe, Toshiba infringes under the doctrine of equivalents.

130.    By way of example, the Excite 13 tablet has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the Excite 13 tablet has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

131.    By at least December 19, 2012, Plaintiff gave notice to Toshiba of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions.  Notwithstanding, Toshiba continues to willfully infringe upon one or more claims of the Asserted Patents.

132.    With knowledge of the '076 and '178 patents at least as early as December 19, 2012, Toshiba has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  Toshiba provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

### ZTE's Infringing Devices

133.    Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

134.    Upon information and belief, ZTE (USA) Inc. ("ZTE") manufactures and sells several devices including, but not limited to the ZTE Velox tablet series as well as the ZTE Flash, ZTE Engage, ZTE Warp Sequent, ZTE Concord, ZTE Anthem, ZTE Origin, ZTE Optik series product lines.

135.    Upon information and belief, ZTE has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '076 patent.  In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if ZTE is not found to literally infringe, ZTE infringes under the doctrine of equivalents.

FIRST AMENDED COMPLAINT

136.    By way of example and based upon information and belief, ZTE's product line includes the Velox tablet which is an audio program player capable of playing a sequence of audio program segments or files (*i.e.* playlists), and accepts commands from the user to skip forward and backward in the sequence. The audio player utilizes "Google's Play Music," an application that resides on the device to play and control the sequence of audio program segments.

137.    Upon information and belief, by using Google Play Music, the device at least has the capability to continuously play a playlist of audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.

138.    Upon information and belief, ZTE also has been and now is directly infringing in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, importing, making, selling, offering to sell, and/or using a device that infringes on one or more claims of the '178 patent. In the alternative, because the manner of use of the device differs in no substantial way from the claims of the patent, if ZTE is not found to literally infringe, ZTE infringes under the doctrine of equivalents.

139.    By way of example, the Velox tablet has a wireless communications port. Through its wireless communications port, it is capable of establishing a data communications link for downloading and receiving a plurality of audio program files and a sequencing file that specifics the playlist sequence. In particular, the Velox tablet has the capability to initiate the download of a playlist sequencing file via a request sent by the device.

140.     By at least January 2, 2013, Plaintiff gave notice to ZTE of Plaintiff's rights in the Asserted Patents via letter, to request that the parties engage in licensing discussions. Notwithstanding, ZTE continues to willfully infringe upon one or more claims of the Asserted Patents.

141.     With knowledge of the '076 and '178 patents at least as early as January 2, 2013, ZTE has actively induced others including its customers to infringe and contributed to the infringement by others of the '076 and '178 patents throughout the United States, knowing that Plaintiff alleges such activities to be infringing.  ZTE provides and instructs its customers to use the aforementioned devices in the manner claimed in the '076 and '178 patents.  The infringing devices have no substantial non-infringing uses.

## COUNT ONE
## PATENT INFRINGEMENT—U.S. PATENT NO. 6,199,076

142.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

143.     All Defendants have infringed and continue to infringe the '076 patent by making, using, selling, offering for sale, and/or importing, without authority, products and services, that embody one or more of the claims of the '076 patent in violation of 35 U.S.C. §271(a).

144.     Defendants indirectly infringe the '076 patent by inducing or contributing to the infringement of the '076 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by their customers/consumers.

145.     Defendants do not have a license or permission to use the claimed subject matter in the '076 patent.

First Amended Complaint

146.    As a direct and proximate result of Defendants' infringement of the '076 patent, Personal Audio has been injured and has been caused significant financial damage.

147.    Defendants' aforementioned acts have caused damage to Personal Audio and will continue to do so unless and until enjoined.

148.    Personal Audio alleges upon information and belief that Defendants have knowingly or with reckless disregard willfully infringed one or more claims of the '076 patent. Defendants have had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by the United States Patent & Trademark Office and Personal Audio.   Defendants acted with knowledge of the Accused Patents and despite their knowledge or despite that they should have known of an objectively high likelihood that their actions constituted infringement of Personal Audio's valid patent rights, continue to infringe.

149.    This objectively-defined risk was either known or so obvious that it should have been known to Defendants.   Personal Audio seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendants.

## COUNT TWO
## PATENT INFRINGEMENT—U.S. PATENT NO. 7,509,178

150.    Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

151.    All Defendants have infringed and continue to infringe the '178 patent by making, using, selling, offering for sale, and/or importing, without authority, products and services, that embody one or more of the claims of the '178 patent in violation of 35 U.S.C. §271(a).

152.    Defendants indirectly infringe the '178 patent by inducing or contributing to the infringement of the '178 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by their customers/consumers.

153.    Defendants do not have a license or permission to use the claimed subject matter in the '178 patent.

154.    As a direct and proximate result of Defendants' infringement of the '178 patent, Personal Audio has been injured and has been caused significant financial damage.

155.    Defendants' aforementioned acts have caused damage to Personal Audio and will continue to do so unless and until enjoined.

156.    Personal Audio alleges upon information and belief that Defendants have knowingly or with reckless disregard willfully infringed one or more claims of the '178 patent. Defendants have had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by the United States Patent & Trademark Office and Personal Audio.  Defendants acted with knowledge of the Accused Patents and despite their knowledge or despite that they should have known of an objectively high likelihood that their actions constituted infringement of Personal Audio's valid patent rights, continue to infringe.

157.    This objectively-defined risk was either known or so obvious that it should have been known to Defendants.  Personal Audio seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendants.

## VII.   JURY DEMAND

158.    Plaintiff hereby demands a jury on all issues so triable.

## VIII.   REQUEST FOR RELIEF

FIRST AMENDED COMPLAINT

WHEREFORE, Plaintiff Personal Audio respectfully requests that the Court:

A.  Enter judgment that Defendants infringe one or more claims of the Accused patents literally and/or under the doctrine of equivalents;

B.  Permanently enjoin Defendants, their agents, servants, and employees, and all those in privity with Defendants or in active concert and participation with Defendants, from engaging in acts of infringement of the Accused patents;

C.  Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendants of the Accused patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D.  Award Plaintiff its costs, disbursements, attorneys' fees;

E.  Award Plaintiff prejudgment and post-judgment interest to the maximum extent provided under the law; and

F.  Award Plaintiff such further and additional relief as is deemed appropriate by this Court.

Respectfully submitted,

Dated:  October 3, 2014

By: _/s/ William M. Parrish_____
    William M. Parrish
    *Lead Attorney*
    Texas State Bar No. 15540325
    bparrish@dpelaw.com
    Nicole E. Glauser
    Texas State Bar No. 24050694
    nglauser@dpelaw.com
    John D. Saba Jr.
    Texas State Bar No. 24037415
    jsaba@dpelaw.com
    **DiNovo Price Ellwanger & Hardy LLP**
    7000 N.  MoPac Expressway, Suite 350
    Austin, Texas  78731
    Telephone:  (512) 539-2626
    Telecopier:  (512) 539-2627

Douglas Q. Hahn, *Admitted Pro Hac Vice*
California State Bar No. 257559
STRADLING   YOCCA   CARLSON   &
RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
Phone:  949-725-4138
Fax:  949-823-5138
Email:  dhahn@sycr.com

Charles W. Goehringer, Jr.
Texas State Bar No. 00793817
**Germer PLLC**
P.O. Box 4915
Beaumont, Texas 77704
Telephone:  (409) 654-6700
Telecopier:  (409) 835-2115

**ATTORNEYS FOR PLAINTIFF
PERSONAL AUDIO, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) as an attachment to Plaintiff's Motion for Leave to File First Amended Complaint.  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on the 3rd day of October, 2014. At the request of the Clerk, Plaintiff is refiling the foregoing as an independent document on this the 6th day of October, 2014.

*/s/ John D. Saba*
John D. Saba Jr.

FIRST AMENDED COMPLAINT